BETTY J. ENNIS *vs.* STUART L. ENNIS.

APRIL 12, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This petition for divorce was brought by Betty J. Ennis against her husband Stuart Lovell Ennis. Following a hearing in the superior court it was denied and dismissed and to that decision the petitioner duly prosecuted a bill of exceptions to this court.

Two grounds for divorce are set out in the petition, namely, neglect to provide for a period of at least one year next

before the filing thereof and extreme cruelty. We will consider the latter ground first. It appears from the evidence that the parties were married September 9, 1950. At that time petitioner, who was a telephone operator, was eighteen years of age and respondent, who was a carpenter, was twenty-one years old. The instant petition was filed July 29, 1953 and was heard October 22 and December 10, 1953. There were no children of the marriage.

The petitioner was asked by her counsel the following questions: "Q. * * * at this time do you feel there is a remote chance of continuing in this marriage? A. No. Q. And making a go of it? A. No. Q. Did you try * * * during the last two years to get your husband to change his ways so you would have some peace in the household? A. Yes." Also, the trial justice in a commendable effort to ascertain the feeling of the parties in respect to a divorce questioned petitioner as follows: "The Court: Does he want a divorce? The Witness: I don't know. The Court: Do you? The Witness: Yes, I do." And addressing himself to the respondent, who was in the courtroom and who did not testify, the trial justice asked: "Do you want a divorce?" and he received the following answer: "I didn't at first, but she insisted on it so why complain?"

The evidence showed that petitioner worked most of the time while she was married. She testified that she did so at the repeated insistence of respondent and that she turned over to him all her pay but does not know what he did with it. She stated in substance that she desired a home and children but that respondent did not. He enlisted in the navy in December 1951 and the following month went to Florida. She joined him there and he urged her to get work. She obtained employment in a store and worked there until about July 1952 when her husband was ordered to duty elsewhere. She returned to her parents' home in this state and continued to work. Although she received a substantial allotment, at respondent's order and direction she turned this over to his mother so that she could be repaid for a loan

which had been negotiated to pay for an automobile, which was in his possession.

The petitioner described respondent as being very domineering; that all he thought about was money; that he constantly nagged her and argued with her about financial matters several times a week; and that he insisted she continue to work although she complained of being tired and run down, and of desiring rest. She testified that his course of conduct toward her seriously affected her health; that she lost weight; that her hands shook; that she was nervously affected; and that she nearly had a nervous breakdown. It also appears in evidence that after the divorce petition was served and without knowledge of counsel respondent presented to petitioner an agreement concerning money, which she signed. It provided in substance that in consideration of receiving the navy dependent's allotment petitioner agreed to pay all her own lawyer's fees and court costs in the divorce proceedings and to waive any rights she might have to alimony or to respondent's automobile.

In cases involving divorce petitions this court has had occasion to discuss the general meaning of the term extreme cruelty. In *Bastien* v. *Bastien*, 57 R. I. 176, 177, we held: "Extreme cruelty as a ground for divorce under our law is limited to physical cruelty, but such cruelty is not confined to acts of physical violence or threats of the same. It may result from acts or a course of conduct on the part of the guilty party totally devoid of any element of physical injury or threat of physical injury to the other party. This court has held that the effect of such conduct and not the conduct itself constitutes the basis for the charge of extreme cruelty under such circumstances." Also in the same case the court stated that it has declined to attempt any precise legal definition of extreme cruelty and has stopped short of an exclusive definition of the term. Mere mental cruelty not resulting in any impairment of the health of the injured party does not amount to that kind of cruelty which the

legislature has made a ground for divorce. *McKeon* v. *McKeon*, 54 R. I. 163.

In the present case petitioner makes no claim that respondent was guilty of any acts or threats of physical violence toward her. She does contend, however, that his general course of conduct since their marriage and his behavior and acts, willfully and maliciously persisted in, caused and constituted actual physical injury and cruelty. In this respect her claim is supported by a specific finding in the decision of the trial justice wherein he makes the following statement: "Now, as to the charge of extreme cruelty, it must be shown * * * to reasonably result in an impairment to the health of the petitioner. That element I think has been established. Her health was impaired. She became a very nervous woman and her hands shook, and she apparently is close to a nervous breakdown. She needed rest and apparently is sick."

In denying the petition, however, he held in substance that in order to be able to make a finding of extreme cruelty in this case, where no physical violence was shown, it must be established that respondent's conduct toward petitioner was the result of what he termed a "cruel mind." In this connection the principle of law to which the trial justice apparently was alluding is found stated in several of our cases, not always in precisely the same language but clearly with the intent of conveying the same meaning. While the language referred to by the trial justice appears in *Bastien* v. *Bastien, supra,* it is plain from the context that the court was affirming the principle that was expressed in more detail in *Borda* v. *Borda,* 44 R. I. 337, 340. In the latter case it was held: "There was no evidence before said justice of physical violence upon the part of the petitioner toward the respondent but there was shown a course of conduct on the petitioner's part, wilfully and maliciously persisted in, which naturally resulted in causing in the respondent a wretchedness of mind affecting her health and making it impossible for her to longer endure conjugal relations with

the petitioner." In the instant case the existence or soundness of the above principle of law is not questioned. The issue here concerns its application to the facts and the reasonable inferences to be drawn therefrom.

We have given careful consideration to all the evidence submitted and have come to the conclusion that the trial justice was clearly wrong in placing the construction he did upon the above principle of law, particularly with respect to its application to all the facts and circumstances in the instant case. Of necessity the matter is largely one of reasonable inference. From the entire evidence it is clear that we have here two young people, the man domineering and interested chiefly in acquiring money, the woman submissive and attempting to do what her husband demands of her in the way of work. He makes it impossible, without causing constant family arguments, for her to actually have much money although she worked most of the time. He pays no attention to the fact that she would like a family and a respite from working but keeps insisting that she continue, although her health is undermined and no emergency is shown which requires such action. His conduct and behavior all through their marriage exhibits a selfish and callous disregard for his wife's natural desires, welfare and health.

It is our opinion that by reasonable inference from all the facts and circumstances there is ample evidence showing a "cruel mind," if that expression is properly understood and applied as it was described in the *Borda* case, *supra,* namely, as a course of conduct willfully and maliciously persisted in which naturally results in causing the other party a wretchedness of mind affecting her health. In our judgment the petitioner on the present record has proved the allegations of her petition as to her own freedom from fault and respondent's extreme cruelty which affected her health. Therefore she was entitled to a decision in her favor on that ground. In view of this conclusion it is unnecessary to consider the other ground, namely, neglect to provide.

The petitioner's exception is sustained, and the respondent may appear before this court on April 22, 1955 to show cause, if any he has, why the case should not be remitted to the superior court with direction to grant the petition.

*Thomas F. Vance, Jr.,* for petitioner.

*Joseph G. Reed,* for respondent.